IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZONIA RODRIGUEZ, individually, on behalf of B.R., a minor, and as personal representative for THE ESTATE OF SANDRA RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>JUAN C. ZAYAS-CASTRO, NERI LOGISTICS, LLC, BROWN INTEGRATED LOGISTICS, INC., UBER FRIEGHT US LLC, and TOSCA LTD.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS FILED BY BROWN INTEGRATED<br><br>Case No. 2:25-cv-01030-JNP-CMR<br><br>Chief Judge Jill N. Parrish |

Before the court is defendant Brown Integrated Logistics, Inc.'s motion to dismiss plaintiff Zonia Rodriguez's respondeat superior claims against it. Dkt. No. 31. The motion is DENIED.

## BACKGROUND

Tosca Ltd. needed to transport a shipment from its Southern California facility to its Salt Lake City facility. Uber Freight US LLC conducted an auction for the job, and Brown submitted the winning bid. Brown hired Neri Logistics, LLC to perform the work.

Brown provided the required documentation for the shipment, including the bill of lading and invoices, and communicated with Tosca regarding logistics for the job. Brown also dictated the equipment and the tracking software that Neri was required to use. Brown directed Neri to pick up the shipment at 8:30 a.m. on January 3, 2024 and to deliver it to Salt Lake City within 24 hours.

On the morning of January 3, Neri employee Juan Zayas-Castro left the Neri facility in a semi-truck around 8:00 a.m. Pacific Time and arrived at the Tosca facility by 8:30 a.m. When

Zayas-Castro arrived, the shipment was not ready for pickup. Indeed, Tosca did not begin loading the shipment until well after Zayas-Castro arrived, and it was not ready for transport until around 1:00 p.m. Soon thereafter, Zayas-Castro departed for Salt Lake City. Neri provided updates to Brown regarding the delay while Zayas-Castro waited at Tosca's Southern California facility. Neri also communicated the departure time to Brown.

Around 1:20 a.m. Mountain Time on January 4, Zayas-Castro overturned his semi-truck and trailer on the I-15 freeway south of Salt Lake City. The semi and trailer came to rest on their side, obstructing the freeway. A vehicle driven by Jennifer Lazcano, with passengers Sandra Rodriguez and B.R., was traveling on I-15 some distance behind Zayas-Castro. Lazcano did not see the overturned semi-truck and trailer and struck it at near freeway speed. Lazcano and Sandra Rodriguez were killed instantly. B.R. suffered severe injuries.

Zonia Rodrigez is the personal representative of the estate of Sandra Rodriguez and the mother and guardian of B.R. On her own behalf, and on behalf of the estate and B.R., she sued Tosca, Uber Freight, Brown, Neri, and Zayas-Castro for negligence and wrongful death. Zonia Rodriguez alleges that Zayas-Castro overturned his vehicle because he was exhausted from being on duty for 16 hours and 20 minutes by the time of the accident. She asserts that Brown is both directly liable for the accident and that it is liable under the doctrine of respondeat superior for the actions of Zayas-Castro and Neri.

Now before the court is a motion to dismiss filed by Brown. It argues that it cannot be liable under respondeat superior because Neri was an independent contractor.[1] Zonia Rodriguez

---

[1] In its motion, Brown argued that the court should dismiss all claims against it because it cannot be liable under respondeat superior. Zonia Rodriguez responded that she also asserted a claim for direct liability against Brown and that, regardless of the fate of the respondeat superior claim, the

responds that Brown is liable for the actions of Neri and Zayas-Castro under three exceptions to the general rule that respondeat superior liability does not attach to the employer of an independent contractor: (1) the retained control doctrine, (2) the statutory employee doctrine, and (3) the peculiar risk doctrine.

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss an action if the complaint fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

### I. RETAINED CONTROL DOCTRINE

The employer of an independent contractor is generally not liable for the acts or omissions of the contractor. *Magana v. Dave Roth Const.*, 215 P.3d 143, 148 (Utah 2009). "Despite the general non-liability rule, the employer of a contractor remains liable for the contractor's actions when the employer participates in or controls the manner in which the contractor's work is performed, and therefore owes a duty of care concerning the safety of the manner or method of performance implemented." *Id.* (citation modified). "This exception to the general non-liability

court should not dismiss her direct liability claim. Because Brown did not address the direct liability claim in either its motion or reply, the court restricts its analysis to the subject of Brown's motion: the respondeat superior claim.

rule is called the retained control doctrine, and it is applied narrowly in *unique circumstances* where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care." *Id.* (citation modified).

Importantly, the control exercised by the employer must corollate with the cause of the injury in order for the retained control doctrine to apply. In other words, an employer is liable for the actions of an independent contractor only if "the employer exerts sufficient control over the independent contractor such that the contractor cannot carry out *the injury-causing aspect of the work* in its own way." *Id.* at 149 (citation modified). "An aspect of the work constitutes an injury-causing aspect when the aspect is a legal cause of the plaintiff's injuries." *Id.*

In this case, Zonia Rodriguez alleges that the legal cause of the accident that lead to Sandra Rodriguez's death and B.R.'s injuries was Zayas-Castro's fatigue from being on duty for at least 16 hours and 20 minutes at the time that he turned over his semi-truck and trailer on the freeway. The facts alleged by the complaint are sufficient to support the application of the retained control doctrine to Brown. Zonia Rodriguiez asserts that Brown dictated when Zayas-Castro had to arrive at Tosca's Southern California facility to pick up the shipment (8:30 a.m.) and when he had to deliver the shipment to Salt Lake City (within 24 hours). Brown was aware of the fact that the shipment was not ready for transport until 1:00 p.m., four and a half hours after Zayas-Castro had arrived to pick up the load. Brown, however, did not adjust its requirement that Zayas-Castro deliver the shipment within 24 hours. These facts plausibly support the conclusion that Brown's mandate that the shipment be delivered by the following morning, despite the delay in preparing the shipment, caused Zayas-Castro to be on the freeway in the middle of the night after being on shift for over 16 hours. In other words, the allegations of the complaint credibly indicate that Brown exerted control over the injury-causing aspect of the shipping job that Brown had assigned

to Neri and Zayas-Castro. *See Boynton v. Kennecott Utah Copper, LLC*, 500 P.3d 847, 865 (Utah 2021) (holding that a plaintiff had sufficiently alleged that a defendant exercised control over an injury-causing activity by asserting that the defendant required a subcontractor to use materials containing asbestos to complete a job); *Johnson v. Dep't of Transp.*, 98 P.3d 773, 778 (Utah Ct. App. 2004) (denying summary judgment for the defendant on the plaintiff's retained control claim for vicarious liability because the defendant dictated a traffic control plan to be implemented by the independent contractor). Because Zonia Rodriguez has alleged facts supporting the retained control doctrine, the court denies Brown's motion to dismiss her respondeat superior claim.

## II. STATUTORY EMPLOYEE DOCTRINE

Zonia Rodriguez also argues that Brown can be held vicariously liable for the negligence of Neri and Zayas-Castro under the statutory employee doctrine. This doctrine is based on provisions of the Federal Motor Carrier Safety Regulations (FMCSR), which impose certain nondelegable duties on "motor carriers." *Gutierrez v. Uni Trans, LLC*, No. 1:21-cv-00073-KWR-SCY, 2023 WL 5099694, at *5 (D.N.M. Aug. 9, 2023) ("The FMCSR create[s] a statutory employee relationship between owner-lessors and authorized motor carrier-lessees."); *Dixon v. Stone Truck Line, Inc.*, No. 2:19-cv-000945-JCH-GJF, 2021 WL 5493076, at *16 (D.N.M. Nov. 23, 2021) ("[A]n 'interstate carrier is vicariously liable as a matter of law under the FMCSR for the negligence of its statutory employee drivers.'" (citation omitted)); *Hartman v. Thompson*, No. 21 C 1409, 2025 WL 2675949, at *4 (N.D. Ill. Sept. 18, 2025) ("Courts have explained that [specific] statutes [*i.e.*, 49 U.S.C. § 14102] and regulations [issued pursuant to the relevant statutes] are intended to ensure that motor carriers can be held liable for negligence related to the trucks they use and the drivers of those trucks, 'even when an employment relationship does not

technically exist,' thereby creating what is known as 'statutory employer liability.'" (alterations in original) (citation omitted)).

Brown does not challenge the substance of Zonia Rodriguez's statutory employee theory of vicarious liability, and the court has no occasion to rule on the merits of this theory. Brown's sole argument for dismissal of a claim for vicarious liability based on the statutory employee doctrine is that this court is barred from applying federal statutes and regulations in this proceeding by *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Brown's argument misapprehends the *Erie* doctrine.

Originally enacted in 1789, the Rules of Decision Act dictates which laws federal courts must apply in civil actions: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652. Interpreting this statute, the Supreme Court held in *Erie* that federal courts must apply the appropriate state's substantive common law, as declared by the state's highest court, in an action in which the court assumes subject matter jurisdiction based on diversity of citizenship. 304 U.S. at 78–80. But *Erie* acknowledged what was plainly stated in the Rules of Decision Act: that federal courts must apply federal statutes in diversity jurisdiction cases. *Id.* at 78 ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). The Tenth Circuit and other circuit courts have recognized this fundamental principal. *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 879 (10th Cir. 2006) ("[B]ecause *Erie* does not apply to acts of Congress, the substance/procedure dichotomy embodied in that doctrine is inapplicable to the Federal Rules of Evidence as originally enacted."); *In re Johnson*, 485 B.R. 642, 645 (Bankr. D. Colo. 2013) ("[T]he *Erie* doctrine is inapplicable to claims or issues created

and governed by federal law, even if the jurisdiction of the federal court rests on diversity of citizenship." (quoting *Maternally Yours, Inc. v. Your Maternity Shop, Inc.,* 234 F.2d 538, 541 n. 1 (2d Cir.1956)).

Thus, the *Erie* doctrine does not bar this court from applying the statutory employee doctrine. This doctrine is based on a federal regulation (the FMCSR), which was promulgated pursuant to a federal statute. Therefore, the Rules of Decision Act requires this court to apply the statutory employee doctrine in this action. *See Gutierrez*, 2023 WL 5099694, at *3, *5 (applying the statutory employee doctrine to a state-law negligence claim); *Dixon*, 2021 WL 5493076, at *2, *16 (same); *Hartman*, 2025 WL 2675949, at *4 (same).

Moreover, Utah law explicitly incorporates the FMCSR. UTAH ADMIN. CODE R909-1-3 ("Safety Regulations for Motor Carriers, 49 CFR Parts 350 through 384, Part 385.4, Parts 387 through 399, and Part 40, as amended by the Federal Register through June 22, 2023, are incorporated by reference . . . ."); UTAH CODE § 41-6a-206 ("Federal Motor Carrier Safety Regulations supercede [sic] any conflicting provisions of this chapter [the Traffic Code] pertaining to commercial motor carriers."). Because the FMCSR has been incorporated into Utah law, *Erie* does not prohibit the application of the statutory employee doctrine established in these safety regulations.

Finally, at oral argument Brown asserted that Zonia Rodriguez had not adequately pled her statutory employee theory of vicarious liability. The court disagrees. "At the pleading stage, plaintiffs are not required to plead evidentiary detail of the agency or contractor relationship between Johnson [the driver of a semi-tractor trailer involved in a motor vehicle collision] and each purported principal; they need only provide enough factual context to give fair notice of the nature of the vicarious liability theory and to raise the claim above the speculative level." *Williams*

*v. Johnson*, No. 6:24-cv-241-JAR, 2026 WL 1182022, at *3 (E.D. Okla. Apr. 30, 2026). In her complaint, Zonia Rodriguez alleged that Brown had a master/servant relationship with Neri and Zayas-Castro. Dkt. No. 54 at ¶¶ 24, 55. She also asserted that Brown "acted as the 'motor carrier' for the shipment in question" and listed facts supporting that conclusion. Dkt. No. 54 at ¶ 27. Finally, Zonia Rodriguez alleged that Brown breached multiple provisions of the FMCSR. Dkt. No. 54 at ¶¶ 50–52. Plaintiffs are not required to plead formal labels for theories of vicarious liability. Because Zonia Rodriguez pled sufficient factual context to give fair notice of her statutory employee theory of vicarious liability under the FMCSR, the court rejects Brown's contention that this theory of respondeat superior liability was not adequately pled.

For these reasons, the court denies Brown's motion to dismiss Zonia Rodriguez's statutory employee theory of vicarious liability.

## III. PECULIAR RISK DOCTRINE

Zonia Rodriguez also argues that Brown is vicariously liable for the negligence of its independent contractors under the peculiar risk doctrine, which imputes respondeat superior liability on an employer that retains an independent contractor to do work that involves "a peculiar risk of physical harm to others unless special precautions are taken." RESTATEMENT (SECOND) OF TORTS § 416 (1965). In support of her peculiar risk theory, she cites *Thompson v. Jess*, 979 P.2d 322 (Utah 1999). In that case, the Utah Supreme Court referenced the provisions of the Restatement (Second) of Torts that describe the peculiar risk doctrine. *Id.* at 329. But that court did not formally adopt the doctrine because it held that it did not apply where an employee of an independent contractor, rather than a third party, sued the party that retained the independent contractor. *Id.* at 329–30.

Brown argues that the peculiar risk doctrine does not impute vicarious liability. First, it notes that no Utah court has ever explicitly adopted this doctrine. *See Berrett v. Albertsons Inc.*, 293 P.3d 1108, 1116 (Utah Ct. App. 2012) (collecting cases in which Utah courts have referenced the peculiar risk doctrine but did not apply it to resolve a claim). Second, Brown contends that Zonia Rodriguez has not alleged facts that would justify the application of this doctrine in this case.

The court declines to resolve the parties' contentions regarding the peculiar risk doctrine at this juncture. As discussed above, the court denies Brown's motion to dismiss Zonia Rodriguez's respondeat superior claim because Brown has not shown that the retained control or statutory employee doctrines do not impose vicarious liability in this case. Since these doctrines are sufficient to resolve the motion before the court, it need not weigh in on a doctrine that has never been explicitly adopted or applied by Utah courts. Given the dearth of Utah law on this doctrine, the court chooses not to address its application to this case in this order.

**CONCLUSION**

For the above-stated reasons, the court denies Brown's motion to dismiss Zonia Rodriguez's respondeat superior claim against it.

DATED September 17, 2026.

BY THE COURT

Jill N. Parrish
Chief Judge, District of Utah